SAMUEL, Judge.
This is a suit by plaintiffs, Marlene Martin Champagne and Russell Martin, children of Eula D. Eusea, against their deceased mother’s second husband, Sidney Eusea. The suit is based on various claims arising out of plaintiffs’ inheritance from their mother. It seeks an accounting, reimbursement, and determination of ownership of certain jewelry.
Defendant answered, denying liability, and filed a reconventional demand seeking reimbursement of various items expended by him, plus $10,000 in damages for construction by plaintiffs of a fence between the house in which he lived and a trailer park directly behind it.
The trial court judgment grants plaintiffs reimbursement of $150 insurance expense and declares them to be the owners of the three items of jewelry in suit. It dismisses plaintiffs’ request for an accounting and reimbursement of various items as will be discussed below. In addition, the judgment recognizes defendant as entitled to a usu-fruct on the entire property in which he lived, also recognizes him as the owner of one-half of the two checking accounts in litigation, and awards him $500 for the estimated cost of removing the fence erected by plaintiffs. Plaintiffs have appealed.
*861 Some background information is necessary to understand the issues presented. Eula D. Eusea died on August 23, 1977. She was survived by two children, the plaintiffs herein, and by a second husband, the defendant. The major part of her estate consisted of separate property, which she inherited from her father. Among her separate assets was her home in Paradis, Louisiana, in which she lived with her second husband.
As the decedent did not commingle her separate estate with community assets, there is little argument regarding what property is community and what is separate property. However, much controversy exists involving the meaning of decedent’s last will and testament, particularly as to the extent of the usufruct or other right that document bequeaths to the defendant.
Prior to the probate of decedent’s will by the defendant, plaintiffs sought and obtained a judgment of possession recognizing them as the owners of all of decedent’s separate property and of her one-half of the relatively small community estate. The petition for possession states that although plaintiffs did not have physical possession of their mother’s will, they were aware one existed which gave the second husband the usufruct over the home in Paradis, Louisiana. Plaintiffs stated they did not oppose such a usufruct if one existed, and this was made part of the succession record.
A short time after this judgment of possession was signed, defendant filed decedent’s will for probate.[1] The disposition in the will which now forms a major controversy is a provision by which the decedent declared she desired her husband “. . . have the complet [sic] use of my house and the property upon which it is situated to live in for the remainder of his life ....”[2]
The judgment appealed from recognizes defendant as the owner of a usufruct “comprising the home and the 90 foot by 110 foot lot .... including the spaces for trailer rent.” This portion of the judgment is confusing, since both sides agree the property is not merely a small 90 by 110 foot lot, but instead comprises a larger tract measuring 125 feet wide by approximately 700 feet deep. The parties also agree that on this tract were both the house in suit and a trailer park, the utilities for which were installed by plaintiff, Russell Martin, and his brother-in-law, Julien P. Champagne, shortly before decedent confected her will in September, 1968. The problem is further confused by the fact that the trial judge awarded defendant a usufruct over the entire tract of ground in spite of defendant’s prayer in reconvention that he be awarded a usufruct over only three trailer spaces.
The house itself is set back approximately 50 feet from the front property line. Behind the house is a carport and a small back yard. The trailer park adjoins the rear of that yard and extends to the back property line.
After Champagne and Martin installed the utilities for the trailer park, Champagne administered it by collecting the rents and paying the bills. He later turned operation of the park over to Mrs. Eusea, and after her death plaintiffs notified defendant, Sidney Eusea, they would recognize his usu-fruct of the home, while claiming their right to possession of the trailer park. Nevertheless, defendant collected the trailer park rentals from August 23, 1977 (the date of decedent’s death) until February, 1978.
Defendant offered no testimony supporting his claim to a usufruct or other right over three trailer spaces. Champagne testified he installed utilities and began operat *862 ing the park around 1966; that decedent collected the rents for him and deposited them into his bank account until approximately a year prior to her death; and that for the last year of her life she collected the rentals for her own account. This testimony was not contradicted.
Our primary task is to determine the intention of the testatrix in order to ascertain the extent of the usufruct bequest to the defendant. When the will was written in September, 1968, the trailer park improvements had only recently been installed, and the rent was being collected either by Champagne or by decedent for his account. Plaintiffs argue, and we agree, it is not likely decedent intended to grant her second husband rights over a new commercial venture begun by her son-in-law which, of necessity, reaped a benefit to her daughter. This is particularly true since at the time of her will and for some years thereafter, defendant had nothing to do with the administration of the trailer park or collection of rents. Also, decedent’s choice of words cannot be ignored. She willed to defendant “use of my house and the property upon which it is situated to live in for the remainder of his life . . . .” (emphasis ours). Decedent chose the word “house” and did not use the word “home”. Had she used the word “home”, a broader interpretation might be justified.[3] In addition, the decedent limited the extent of the bequest by adding the words “to live in for the remainder of his life”. She could not have contemplated the defendant would “live” in a tract of land 110 feet wide by 700 feet in length, especially when the major portion of the rear of the tract was a trailer park.
We conclude the intention of the testatrix was to give defendant a servitude over the house and the land upon which it was built, including normal ancillary buildings and appurtenances, such as the carport and the small front and back yards. The wording of the testamentary bequest does not support the trial court’s award of a usufruct over the entire depth of the 700 foot property.
This conclusion is further strengthened by the error contained in the judgment by which the trial court awarded defendant the usufruct “comprising the home site and the 90 foot by 100 foot lot .... including spaces for trailer rents.” The trial judge may have thought the property was only a small lot measuring 90 by 110 feet, and apparently assumed the trailer park was somehow included in this area of land.
However, the property is far larger; it exceeds the amount of space necessary for defendant “to live in . .. . ” The judgment will be modified by limiting the extent of defendant’s usufruct to the house, and that portion of the property from the front property line to the fence now separating the house and adjacent out building from the trailer park. However, as the record does not contain a sufficient description of the property for this court to comply with LSA-C.C.P. Art. 1919 in our decree, we will remand for a survey to determine the exact property subject to defendant’s usufruct in the event the parties cannot agree thereon.
Having reached this conclusion, it follows that the trial judge also erred by awarding defendant a usufruct over any of the trailer spaces. Defendant claimed a usufruct over only three spaces, but offered no testimony in support of that claim. This lack of testimony, together with our conclusion regarding the testatrix’ donative intent, mandates the judgment be further amended to eliminate trailer spaces from the defendant’s usufruct.
Likewise, the result now reached requires that we amend the judgment appealed from to cause defendant to account to plaintiffs for rentals collected by him from August 23, 1977 until the time plaintiffs began those collections. Plaintiff Martin and his brother-in-law, Champagne, presented and verified a list itemizing the number of trailers present in the trailer park during each of these months and showed the amount of $1,720 as revenue for that period. Defendant attempted to set *863 off against this amount the cost he claims he paid for a load of shells on the trailer park, but he presented no evidence of payment, no bill, and no indication of the vendor. The amount of $1,720 requested by the plaintiffs should have been awarded to them.
Directly related to the issue of the extent of the testamentary bequest enjoyed by defendant is the trial judge’s award of $500 to defendant for the estimated cost of removal of a fence constructed by them to separate the trailer park from the front portion of the property. Since we conclude defendant has no right to a usufruct over the trailer park, we also must conclude the fence separating the two portions of the property is appropriate and eliminate from the judgment the $500 award to defendant.
Next, the judgment recognized defendant as half owner of certain community checking accounts at the Bank of St. Charles & Trust Company and the American Bank. Appellants readily concede these banks already have paid to them their mother’s one-half of the balance existing on the date of her death. They consequently concede the trial judge incorrectly awarded defendant one-half of the remaining balances and should have awarded defendant the remaining balances in their entirety. The judgment will be amended accordingly.
Plaintiffs further argue the trial judge committed error by simply recognizing them as the owners of three pieces of jewelry owned by their mother at the time of her death and by not ordering defendant to return this jewelry or pay to them the sum of $500. Involved here are a white gold diamond ring, yellow gold initial ring, and a yellow gold pin. Plaintiffs testified they saw their mother in possession of one of the rings and the pin during the last two weeks prior to her death. Defendant testified he was in possession of one of the two rings (a diamond ring), contended it was given to him by the decedent before she died, and denied knowledge of the whereabouts of the other ring and pin. His testimony is the only evidence regarding such a gift. There was no evidence to indicate the value of the jewelry, and a money award against defendant would have been mere speculation.
In our view, while the trial judge correctly recognized plaintiffs as owners of the jewelry and correctly concluded plaintiffs did not prove defendant was in possession of the ring and pin of which he denies any knowledge, defendant failed to prove a gift of the diamond ring in his possession and we know of no reason why he should not be ordered to return the same. We will amend the judgment accordingly.
Plaintiffs next complain because the trial court did not grant them judgment for $3,086.50 for reimbursement of one-half of the separate funds decedent used to purchase certain property in Grand Isle, Louisiana.
Decedent inherited a 25% interest in her father’s succession. Along with the other undivided owners, over the years decedent would sell items from this inheritance, and the proceeds usually were deposited in a savings account decedent maintained in the Bank of St. Charles & Trust Company. That the only funds placed in this savings account were proceeds from various sales of separate property belonging to decedent is not contested and, as we have said, it is clear there was no commingling of separate and community funds in this account.
On May 16, 1973, decedent sold her interest in certain property to one Leonard Fisher. Decedent’s 25% share of the proceeds was $19,250. On that day, she made a deposit of $16,000 in the St. Charles Bank savings account. A short time later, on July 9, 1973, she withdrew $6,173 from this savings account and on the same date of July 9, 1973 purchased the Grand Isle property with defendant for $10,200. Defendant admits in testimony that this withdrawal was used in the purchase of the property. Defendant argues that although separate and community funds were used to purchase the Grand Isle property, the purchase document did not contain a double declara *864 tion establishing the separate nature of decedent’s funds, and the plaintiffs have not rebutted the resulting presumption of community.
This argument is without merit. It does not meet the question presented, since plaintiffs concede the property was community in nature, but simply demand reimbursement for one-half of the decedent’s separate property admittedly used in its purchase. When separate funds are used to increase the value of the community estate, and when the amount of the separate property can be traced without difficulty, reimbursement is owed the heirs of the separate estate upon dissolution of the community.[4]
In the present case, decedent’s contribution of her separate funds to the purchase of the Grand Isle property can be readily traced, and even though the property is properly regarded as community, plaintiffs as heirs of the decedent are entitled to an accounting and reimbursement of one-half of the separate funds used to acquire the community property.[5] The judgment will be amended accordingly.
Plaintiffs’ final argument is that the trial court committed error by failing to award them $1,250 as reimbursement for one-half the separate funds used by decedent to purchase a 1976 Ford automobile. On the other hand, defendant claimed reimbursement of $250 on the theory that he purchased from plaintiffs decedent’s one-half interest in the family car for the sum of $1,500.
The same principles applicable to the Grand Isle property apply to the family automobile and need not be restated. The facts show that on December 3, 1975 decedent sold certain property, for which she received $2,250. That amount was deposited in her separate savings account the next day. Four days later, a $2,500 withdrawal was made from decedent’s separate savings account, and on December 15,1975 decedent and defendant purchased a new 1976 Ford automobile with a cash down payment of $2,500. The automobile was listed in decedent’s succession as community property.
We conclude plaintiffs are entitled to reimbursement of $1,250. The check for $1,500 sent by defendant to plaintiffs’ attorney on January 30, 1978 represented a purchase by defendant from the succession of the decedent’s one-half interest in the vehicle. Proof of the nature of the transaction is that title to the automobile was delivered to defendant, and supposedly title was changed to his name. However, the subsequent purchase from decedent’s succession of her interest in the automobile is unrelated to the original acquisition and the nature of the funds used by decedent and defendant in acquiring the automobile. As with the Grand Isle property, the automobile was purchased during the existence of the community, and as such it is presumed to be community property. The separate nature of the funds used for the down payment on the automobile are readily traceable to decedent’s separate funds, and her heirs are now entitled to be reimbursed for one-half of that amount.[6] The judgment will be amended accordingly.
For the reasons assigned, the judgment appealed from is affirmed in part, amended in part, reversed in part and recast so as to read as follows:
“It is ordered, adjudged and decreed that there be judgment in favor of plaintiffs, Russell P. Martin and Marlene Martin, wife of Julien P. Champagne, and against defendant and plaintiff in reconvention, Sidney Eusea: (1) recognizing the said Sidney Eusea as the owner of a usufruct over the immovable property in Paradis, Louisiana, which property subject to usufruct extends in area between the two side property lines and from the front property line to the *865 fence separating the house, carport and back yard from the trailer park on the rear portion of the property, and excluded any trailer spaces from said usufruct; (2) awarding plaintiffs $1,720 for trailer park rentals collected by defendant between August 23, 1977 and January 1, 1978, with legal interest from judicial demand; (3) awarding plaintiffs $3,086.50 and $1,250, or a total of $4,336.50, plus legal interest from judicial demand, as reimbursement of one-half of decedent’s separate funds used to acquire immovable property in Grand Isle, Louisiana and a 1976 Ford automobile, respectively; (4) awarding plaintiffs $150 for reimbursement of insurance premiums for the house in Paradis, Louisiana;[7] (5) dismissing defendant’s claim against plaintiffs for damages for erecting a fence on the Paradis, Louisiana property; (6) recognizing plaintiffs as the owners of a white gold diamond ring, a yellow gold initial ring, and a yellow gold pin formerly belonging to their mother, Eula D. Eusea; and (7) ordering the defendant to return the white gold diamond ring to the plaintiffs.
Judgment is further rendered in favor of defendant and plaintiff in reconvention, Sidney Eusea, and against plaintiffs and defendants in reconvention, Russell P. Martin and Marlene Martin, wife of Julien P. Champagne, recognizing said Sidney Eusea as the owner of the entire balance in community checking accounts No. 32-8207-4 in the Bank of St. Charles & Trust Company and No. 3-230-651 in the American Bank.”
It is further ordered that the matter be remanded to the trial court solely for the purpose of establishing a description of the property subject to the usufruct herein recognized as belonging to the said Sidney Eusea, by agreement of the litigants if that is possible or by a proper survey in the absence of such an agreement.
Costs in both courts are to be paid as follows: One-half by the plaintiffs and defendants in reconvention and one-half by the defendant and plaintiff in reconvention.

AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART; RECAST AND REMANDED.

. The two succession proceedings and the suit for an accounting, etc. were consolidated in the trial court and all three are before us on this appeal.

. We note that, under Civil Code Articles 535, et seq., 630, et seq., and 639, et seq., the wording of decedent’s will would appear to bequeath to the defendant the servitude of habitation or use rather than usufruct. However, as the plaintiffs conceded in the trial court that the servitude is one of usufruct, and as they make no complaint in this court in regard thereto, we do not disturb the trial court ruling that a usufruct was bequeathed.

. See Succession of Davis, La.App., 178 So.2d 481.

. See, for example, Vicknair v. Vicknair, La. App., 284 So.2d 836.

. It should be noted the other one-half of this separate property was recouped by plaintiffs when they were recognized as the owners of decedent’s one-half of the Grand Isle property.

.See Vicknair v. Vicknair, supra, note 3.

. This item is not in dispute.