TYSON, Judge.
Appellant was indicted and convicted of theft of property in the first degree under § 13A-8-3, Code of Alabama 1975. A sentence of life imprisonment was imposed by the trial court pursuant to the habitual offender statute. Because appellant questions the sufficiency of the evidence, we detail the state’s evidence which was sufficient to sustain appellant’s conviction.
Sergeant Roger L. Motley of the Opelika Police Department testified he owned a 1976 Ford Maverick in December of 1981. The automobile was white over brown in color and bore the tag number GFM 383. On December 29, 1981, his vehicle was parked on the McCarley-Folds used car lot in Lee County, Alabama, where he had placed it for sale. Sergeant Motley did not actually see his automobile on the lot on December 29,1981, but knew of its presence there.
On December 30, 1981, after a conversation with Mr. Glen Folds, Sergeant Motley filed a report with the Opelika Police Department stating his vehicle had been stolen. Sergeant Motley next saw his automobile on February 12, 1982 at the military *1360 police headquarters on Maxwell Air Force Base in Montgomery. He stated that the automobile still bore the tag number GFM 383.
Glen Folds testified he was employed by McCarley and Folds Used Cars in Opelika, Alabama. Mr. Folds, who operated the lot, stated that on December 29,1981, he had on the lot for sale a vehicle owned by Sergeant Motley. Approximately twenty other vehicles were also present on the lot for sale.
Folds stated it was his daily practice to crank each automobile and then leave the keys in the vehicles for easy access to the customers. He specifically recalled seeing Sergeant Motley’s vehicle, with the keys inside of it, on the lot at 8:00 a.m. on December 29, 1981. At approximately 3:00 p.m. that same day, Mr. Folds became aware that Sergeant Motley’s vehicle was missing from the lot. Because he had not been on the lot constantly that day, Mr. Folds could not state at what time between 8:00 a.m. and 3:00 p.m. the vehicle had been removed from the lot. Mr. Folds did not become concerned when he noticed the vehicle missing because he thought Sergeant Motley had picked it up for his use. However, the following morning he talked with Sergeant Motley and realized the vehicle had been taken by someone other than the owner. He and Sergeant Motley then reported the vehicle as stolen to the Opelika Police Department.
Mr. Folds stated that other than himself, there was no one else at the automobile lot who had authority to authorize the removal of vehicles from the lot. As well, Mr. Folds stated he had given no one permission to remove Sergeant Motley’s automobile from the lot that day.
Airman William Green, stationed with the Air Force at Maxwell Air Force Base, testified he was a security policeman handling base patrol on December 29,1981. At approximately 6:00 p.m. he received a call that a green Maverick automobile, tag number GFM 383, had driven through a gate into the Air Base without stopping, as required. Airman Green saw the vehicle and began to pursue it. He attempted to stop the vehicle, which was weaving from side to side, using both siren and lights. After traveling four blocks, he was finally able to stop the automobile with the aid of another police vehicle.
Airman Green identified appellant as the man driving the Maverick automobile that day. He stated that because the man’s breath smelled of alcohol, he conducted procedures for one who was suspected of driving under the influence. In Airman Green’s opinion, appellant was intoxicated at that time.
Appellant was then transported downtown and arrested for “drunk driving.” Airman Green testified appellant had the keys to the Maverick in his possession when he was taken downtown. The vehicle remained at the base while appellant was transported to the County jail. Upon notification that the Maverick matched the description of a stolen vehicle, the Opelika Police Department was contacted by the Air Force.
Airman Green recalled on cross-examination that the Maverick may have been “brownish” or “tannish,” rather than green. He was positive of the tag number, however.
The state rested at the close of Airman Green’s testimony.
I
Appellant argues the state’s circumstantial case was insufficient to establish that appellant feloniously took the vehicle from the used car lot. However, reviewing the facts in light of decisions of a similar nature, we find the state’s circumstantial evidence was sufficient to sustain the conviction. The unexplained possession of recently stolen property is a fact from which the jury may infer the appellant’s guilt. Simas v. State, 410 So.2d 139 (Ala.Cr.App.1981); Carpenter v. State, 408 So.2d 559 (Ala.Cr.App.1981), cert. denied, 408 So.2d 561 (Ala.1982); Harper v. State, 389 So.2d 184 (Ala.Cr.App.1980).
Here appellant was found in possession of the automobile on the very afternoon of the *1361 day the vehicle had been taken from the automobile lot. The base patrolman was forced to pursue him with siren and emergency lights for a distance of four blocks to force him to stop. We find sufficient evidence was presented to present a jury question as to appellant’s guilt of the offense charged.
II
Appellant argues that venue was not proper in Lee County. He asserts the state’s evidence failed to connect him with the locus of the actual theft, which occurred in Lee County, rather than Montgomery County where appellant was apprehended. We have held in issue one that the evidence was sufficient to sustain appellant’s conviction for committing the theft in Lee County. This precludes appellant’s second issue because the rule is that where property is stolen in one county and carried into another, venue is proper in either county. Kilpatrick v. State, 388 So.2d 863 (Ala.Cr.App.1980), cert. denied, 383 So.2d 867 (Ala.1980); See Simas, supra.
No prejudicial error harmful to the substantial rights of appellant having been demonstrated on appeal, this case is affirmed.
AFFIRMED.
All the Judges concur.